GEORGE A. KIMBRELL (*Pro Hac Vice* application pending)
Center for Food Safety
917 SW Oak Street, Suite 300
Portland, OR 97205
Telephone: (971) 271-7372
Facsimile: (971) 271-7374
Email: gkimbrell@centerforfoodsafety.org

AMY R. ATWOOD (*Pro Hac Vice* application pending)
Center for Biological Diversity
P.O. Box 11374
Portland, OR 97211-0374
Telephone: (971) 717-6401
Facsimile: (503) 283-5528
Email: atwood@biologicaldiversity.org

*Counsel for Plaintiffs*

## UNITED STATES DISTRICT COURT
## DISTRICT OF ARIZONA

| | |
|---|---|
| Center for Food Safety; and Center for Biological Diversity, | ) Case No.: |
| | ) |
| Plaintiffs, | ) COMPLAINT |
| | ) |
| v. | ) |
| | ) |
| Sally M.R. Jewell, Secretary of the United States Department of the Interior; and United States Fish and Wildlife Service, | ) |
| | ) |
| Defendants. | ) |
| | ) |

1.      Plaintiffs Center for Food Safety and Center for Biological Diversity (Plaintiffs or Centers) bring this action under the Endangered Species Act, 16 U.S.C. §§ 1531-1544 (ESA), to challenge the failure of the Secretary of the United States Department of Interior (Secretary) and the U.S. Fish and Wildlife Service (FWS) to

comply with the nondiscretionary requirements of the ESA.  Defendants have failed to take required action on Plaintiffs' petition to protect the monarch butterfly (*Danaus plexippus plexippus*) as a threatened species under the ESA. 16 U.S.C. § 1533(b)(3)(A) and (B).  Plaintiffs therefore request this Court to order Defendants to comply by a date certain with the ESA's mandatory, nondiscretionary deadline to make a listing determination on the Centers' citizen petition to list the monarch butterfly as a threatened species under the ESA. *Id*.  Compliance with this mandatory deadline is necessary to ensure the continued survival and recovery of the monarch butterfly.

2.      The monarch, pictured below, is an iconic orange and black butterfly that is one of the most familiar butterflies in North America.



3.      Once common, monarch numbers have declined dramatically since surveys began in 1994.  Scientists survey the area of overwintering habitat in Mexico to assess monarch population trends over time.  While monarch numbers have ticked slightly

upward during the past two years, the four lowest population counts over the past twenty-two years have occurred during the last decade.  The butterfly faces many ongoing threats including: habitat loss and decline of the monarchs' host plant, common milkweed, in the butterfly's Midwest breeding grounds due to sharply increased use of herbicides on crops that are genetically engineered to be herbicide-resistant; habitat loss due to development; logging in the monarchs' wintering grounds; disease and predation; and global climate change.

4.      In light of these threats and the butterfly's decline, on August 26, 2014, the Centers, joined by the Xerces Society for Invertebrate Conservation and preeminent monarch scientist Lincoln Brower, submitted a legal petition (Petition) to protect the monarch butterfly as a threatened species under the ESA.  Drawing from hundreds of scientific articles, the 159-page Petition detailed the status of, and threats to, the monarch butterfly, demonstrating the urgent need for its federal protection under the ESA. *See* Petition to Protect the Monarch Butterfly (*Danaus plexippus plexippus*) under the Endangered Species Act (August 26, 2014), *available at* http://www.centerforfoodsafety.org/files/monarch-esa-petition-final_77427.pdf.

5.      On December 31, 2014, Defendants published in the Federal Register a "90-day finding" pursuant to section 4(b)(3)(A) of the ESA, 16 U.S.C. § 1533(b)(3)(A), which determined that listing the monarch butterfly "may be warranted," and initiated a full status review. 79 Fed. Reg. 78,775 (Dec. 31, 2014).  Since then, however, the agency has made no further findings regarding the butterfly's protection under the ESA.

6.      Specifically, Defendants have not issued the required "12-month finding" under section 4(b)(3)(B) of the ESA, 16 U.S.C. § 1533(b)(3)(B).  The 12-month finding was due December 31, 2015.

7.      Therefore, Plaintiffs hereby seek declaratory and injunctive relief to enforce the mandatory deadline for Defendants to make a 12-month finding on their Petition to list the monarch butterfly under the ESA, and to compel Defendants to make a finding as to whether listing the butterfly as a threatened species under the ESA is warranted. 16 U.S.C. § 1544(b)(3)(B).

## JURISDICTION AND VENUE

8.      The Court has jurisdiction over this action pursuant to 15 U.S.C.

§§ 1540(c), (g)(1)(C) (action arising under ESA citizen suit provision), 5 U.S.C. § 702

(review of agency action under the Administrative Procedure Act (APA)), and 28 U.S.C.

§ 1331 (federal question jurisdiction).

9.      The Court may grant the relief requested under the ESA, 16 U.S.C.

§ 1540(g); the APA, 5 U.S.C. §§ 701-706; and 28 U.S.C. §§ 2201 and 2202 (declaratory

and injunctive relief).

10.     Plaintiffs provided sixty days' notice of their intent to file this suit pursuant

to the citizen suit provision of the ESA, 16 U.S.C. § 1540(g)(2)(C), by letter to

Defendants dated January 5, 2016.  Defendants responded by letter dated February 19,

2016, acknowledging receipt of the notice letter, but did not indicate any effort to remedy

their continuing ESA violation.  Therefore, an actual controversy exists between the

parties within the meaning of 28 U.S.C. § 2201.

11.     Plaintiffs and their members are adversely affected or aggrieved by

Defendants' violations of the ESA.  Defendants' failure to make the statutorily required

12-month finding on the Petition prevents the completion of the listing process and the

implementation of substantive measures pursuant to the ESA to protect the monarch

butterfly.  Without the protections of the ESA, monarch butterflies are more likely to

continue to decline toward extinction.  Plaintiffs are therefore injured because their

scientific, professional, educational, recreational, aesthetic, moral, spiritual, and other

interests in monarch butterflies, described below, are threatened by Defendants' failure to

act.  Defendants' failure to respond to the Petition has also resulted in informational and

procedural injury to Plaintiffs, because Plaintiffs have been deprived of a timely

opportunity to submit additional information and otherwise participate in the listing

process in order to secure protective measures for the species.  These are actual, concrete

injuries to Plaintiffs, caused by Defendants' failure to comply with the ESA and its

implementing regulations.  The relief requested will fully redress those injuries.

12.     The federal government has waived sovereign immunity in this action

4

pursuant to 16 U.S.C. § 1540(g) and 5 U.S.C. § 702.

13.     Venue is proper in the United States District Court for the District of Arizona pursuant to 16 U.S.C. § 1540(g)(3)(A) and 28 U.S.C. § 1391(e), because one of the Plaintiffs resides in that district.

<u>PARTIES</u>

14.     Plaintiff CENTER FOR BIOLOGICAL DIVERSITY (Center) is a nonprofit organization incorporated in California and headquartered in Tucson, Arizona, with field offices throughout the United States and Mexico, including Alaska; Arizona; California; Florida; Hawaii; Idaho; Minnesota; Nevada; New Mexico; New York; Oregon; Washington; Washington, D.C.; and La Paz, Baja California Sur, Mexico.  The Center works through science, law, and creative media to secure a future for all species, great or small, hovering on the brink of extinction.  The Center has more than 50,000 members.  The Center and its members are concerned with the conservation of imperiled species, including the monarch butterfly, and with the effective implementation of the ESA.

15.     Plaintiff CENTER FOR FOOD SAFETY (CFS) is a nonprofit public interest organization whose mission centers on protecting food, farmers, and the environment.  To that end, CFS works to curb the adverse impacts of industrial agriculture on public health, the environment, and animal welfare, and instead promotes organic and other forms of sustainable agriculture.  CFS and its over 750,000 members are concerned about the impacts of industrial agriculture on biodiversity generally, and on monarch butterflies specifically.

16.     Plaintiffs' members and staff include individuals with interests in monarch butterflies and their habitat, ranging from scientific, professional, and educational to recreational, aesthetic, moral, and spiritual.  Plaintiffs' members and staff enjoy, on an ongoing basis, the biological, scientific, research, education, economic, conservation, recreational, and aesthetic values of monarch butterflies, their epic migration, and the areas where they are found during it.

17.     An integral aspect of Plaintiffs' members' enjoyment of monarch

5

butterflies is the expectation and knowledge that the species is able to complete its migration and travel in its native habitat during its migration. For this reason, Plaintiffs' enjoyment of monarch butterflies is dependent on the continued existence of healthy, sustainable populations in the wild.

18.     Defendants' failure to comply with the ESA's nondiscretionary deadline for issuing a 12-month finding deprives monarch butterflies of statutory protections that are vitally necessary to the species' survival and recovery. Until the monarch is protected under the ESA, Plaintiffs' interests in its conservation and recovery are impaired. Therefore, Plaintiffs' members and staff are injured by Defendants' failure to make a timely determination as to whether to list the monarch, as well as by the ongoing harm to the monarchs and their habitat in the absence of such protections. The injuries described are actual, concrete injuries presently suffered by Plaintiffs and their members, and they will continue to occur unless this Court grants relief. These injuries are directly caused by Defendants' inaction. The relief sought herein—an order compelling a 12-month finding for the monarch—would redress these injuries. Plaintiffs and their members have no adequate remedy at law.

19.     Defendant SALLY M.R. JEWELL is the Secretary of the United States Department of Interior and is the federal official in whom the ESA vests final responsibility for making decisions and promulgating regulations required by and in accordance with the ESA, including listing and critical habitat decisions. Secretary Jewell is sued in her official capacity.

20.     Defendant UNITED STATES FISH AND WILDLIFE SERVICE is the agency within the Department of the Interior that is charged with implementing the ESA for the monarch butterfly, as well as ensuring prompt compliance with the ESA's mandatory listing deadlines.

<u>STATUTORY FRAMEWORK</u>

21.     The ESA is a comprehensive federal statute declaring that endangered and threatened species are of "esthetic, ecological, educational, historical, recreational, and scientific value to the Nation and its people." 16 U.S.C. § 1531(a)(3). The purpose of the

6

ESA is to "provide a means whereby the ecosystems upon which endangered species and threatened species depend may be conserved, [and] to provide a program for the conservation of such endangered species and threatened species." *Id*. § 1531(b).

22.     To this end, ESA section 4 requires that the Secretary protect imperiled species by listing them as either "endangered" or "threatened." *Id.* § 1533(a).

23.     The ESA's conservation measures apply only after the Secretary lists a species as threatened or endangered.  For example, section 7 of the ESA requires all federal agencies to ensure that their actions do not "jeopardize the continued existence" of any listed species or "result in the destruction or adverse modification" of a species' "critical habitat." *Id.* § 1536(a)(2).  Section 9 of the ESA prohibits, among other things, "any person" from intentionally taking listed species, or incidentally taking listed species without a lawful authorization from the Secretary. *Id.* §§ 1538(a)(1)(B) and 1539.  Other provisions require the Secretary to designate "critical habitat" for listed species, 16 U.S.C. § 1533(a)(3); require the Secretary to "develop and implement" recovery plans for listed species, 16 U.S.C. § 1533(f); authorize the Secretary to acquire land for the protection of listed species, 16 U.S.C. § 1534; and authorize the Secretary to make federal funds available to states to assist in her efforts to preserve and protect threatened and endangered species, 16 U.S.C. § 1535(d).

24.     To ensure the timely protection of species at risk of extinction, Congress set forth a detailed process whereby citizens may petition the Secretary to list a species as endangered or threatened.  The process includes mandatory, nondiscretionary deadlines that the Secretary must meet so that species in need of protection receive the ESA's substantive protections in a timely fashion.  The three required findings, described below, are the 90-day finding, the 12-month finding, and the final listing determination.  The Secretary has delegated responsibility for making these findings to FWS.

25.     Upon receipt of a listing petition, FWS must "to the maximum extent practicable, within 90-days" make an initial finding as to whether the petition "presents substantial scientific or commercial information indicating that the petitioned action may be warranted." *Id.* § 1533(b)(3)(A).  If FWS finds that the petition does not present

substantial information indicating that listing may be warranted, the petition is rejected and the process ends.

26.     If, on the other hand, as in this case, FWS determines that a petition does present substantial information indicating that listing may be warranted, then the agency must conduct a full scientific review of the species' status. *Id.* § 1533(b)(3)(A).  Upon completion of this status review, and within twelve months from the date that it receives the petition, FWS must make one of three findings: (1) listing is "not warranted"; (2) listing is "warranted"; or (3) listing is "warranted but precluded" by other pending proposals for listing species, provided certain circumstances are present. *Id.* § 1533(b)(3)(B).

27.     If FWS's 12-month finding concludes that listing is warranted, the agency must publish notice of the proposed regulation to list the species as endangered or threatened in the Federal Register for public comment. *Id.* § 1533(b)(3)(B)(ii).  Within one year of publication of the proposed regulation, the ESA requires FWS to render its final determination on the proposal. *Id.* § 1533(b)(6)(A).  At such time, FWS must either list the species, withdraw the proposed listing rule, or, if there is substantial disagreement about scientific data, delay a final listing determination for up to six months in order to solicit more scientific information. *Id.* §§ 1533(b)(6)(A)(i) and 1533(b)(6)(B)(i).

28.     It is critical that Defendants follow scrupulously the ESA's listing procedures and deadlines if species are to be protected in a timely manner, because the ESA does not protect a species facing extinction until it is formally listed as endangered or threatened.

29.     Defendants have regularly ignored statutory procedures and have missed statutory listing deadlines, leading to prior litigation to correct these deficiencies.

30.     On July 12, 2011, Plaintiff Center for Biological Diversity and Defendants entered into a comprehensive stipulated settlement agreement that defines Defendants' responsibilities regarding future ESA statutory deadline litigation between these parties. This complaint is a "deadline suit" as defined in the parties' settlement.

31.     Under the settlement, Plaintiff Center for Biological Diversity may file

deadline suits addressing up to ten species, and to obtain remedies from up to three deadline suits, in each fiscal year from 2012 through 2016.  If the Center for Biological Diversity files suits addressing more than ten species, or obtains remedies from more than three suits in one of these fiscal years, negotiated deadlines that must be met by Defendants under the agreement may be pushed back to 2016.  Under the settlement, a "remedy" means a stipulated settlement agreement or judicially enforceable order requiring Defendants to make any finding, listing determination, or critical habitat determination for a species before April 1, 2017.

32.     As of the date of this filing, during fiscal year 2016, Plaintiff Center for Biological Diversity has not yet filed a "deadline suit," within the meaning of the parties' settlement agreement.

## FACTUAL BACKGROUND

33.     The monarch is a large orange and black butterfly that was once one of the most familiar butterflies in North America.  During summer monarchs can be found throughout the United States and southern Canada in most places where milkweeds (*Asclepias spp*.), its host plants, are available.  For millennia, monarchs have undertaken an annual, spectacular multi-generational migration of thousands of miles to and from overwintering and breeding areas.  Most monarchs east of the Rocky Mountains migrate from southern Canada and the northern United States to the mountains of interior Mexico to overwinter.  Most monarchs west of the Continental Divide migrate to coastal California.

34.     Monarchs east and west of the Rocky Mountains (Rockies) now face significant threats to their survival and recovery in both their summer and winter ranges, and, as illustrated in the graph below, their numbers have declined precipitously in recent years.  The North American monarch population west of the Rockies has declined by thirty-nine percent from its long-term average.  The eastern population shows a statistically significant decline of nine percent per year over the last twenty-two years, and that even with the minor uptick in the past two years, which is attributable to weather, that the population has declined seventy-eight percent from the population highs

of the mid-1990s.  The four lowest population counts over the past twenty-two years have occurred in this decade.  As with other insects, population trends are far more important than year-to-year fluctuations.  For instance, experts had predicted a monarch rebound this year because of near-perfect climactic conditions—conditions that are unlikely to be common in the future.  As the Petition details, the significant threats facing the monarch are high in magnitude and ongoing.



*Graph credited to Ernest Williams

35.    Monarch habitat has been drastically reduced and degraded throughout the butterfly's summer and winter ranges and threats are ongoing.  Monarch habitat is threatened by, among other things, intensive herbicide use associated with genetically engineered, herbicide-resistant crop systems, as well as by development, logging, and climate change.

36.     A primary threat to the monarch is the drastic loss of milkweed caused by intensive use of glyphosate, known by the commercial name Roundup, in conjunction with widespread planting of genetically-engineered crops.  Glyphosate is uniquely effective at killing milkweeds, the only plants monarch larvae can eat.  In the monarchs' major Midwest breeding range, common milkweed has been nearly eradicated from cropland as a result of a massive increase in glyphosate use in conjunction with the nearly ubiquitous planting of glyphosate-resistant, "Roundup Ready" corn and soybeans.  Glyphosate use on "Roundup Ready" cotton and alfalfa and in orchards has also destroyed milkweed in California, with a devastating impact on the monarch population west of the Rockies as well.  Glyphosate use with genetically engineered crops is currently the greatest threat to the resiliency, redundancy, and prevalence of monarch butterflies in North America.

37.     Monarchs are also threatened by habitat loss from residential, industrial, commercial, and other development.  From 1982 to 2010, the developed acreage in the continental United States increased by roughly fifty-eight percent.  Development causes direct loss of monarch butterfly habitat.  It threatens monarch overwintering sites in coastal California and breeding, nectaring, and roosting sites throughout the country.  For example, trees required for winter roosts are uprooted to make way for housing and other urban and suburban infrastructure.  Areas with milkweed are converted to lawns, covered with concrete and asphalt, and otherwise made unsuitable for breeding and nectaring.  Development also contributes to increased pesticide use which harms monarchs.

38.     In addition to the disappearance of milkweed due to increased herbicide use, such as glyphosate, that is associated with genetically engineered crops, direct exposure to other pesticides threatens monarchs as well.  Indeed, pesticides are widely used in modern agriculture, on rangelands, woodlands and other natural areas, waterways, golf courses, residential lawns and gardens, sports fields, roadsides, and on street trees.

39.     Insecticides are of particular concern as they are neurotoxic chemicals that are designed to kill insects.  Because many insecticides are specifically designed to

control lepidopteran crop pests, they are especially toxic to many butterflies, which are in the Order *Lepidoptera*.  Neonicotinoids are a newer class of systemic insecticide that are absorbed by and move within plant tissues, acting as a neurotoxin to insects. Neonicotinoids are lethal to insects at very low doses and cause serious sub-lethal impacts at even lower exposures.  Recent research has shown that monarch larvae are harmed by neonicotinoids found in milkweeds in agricultural areas, and in horticulture. Neonicotinoids are applied before planting as seed coatings to many crops such as corn and soybeans, are used in agriculture and landscaping as soil drenches and trunk injections, spread as granules in pastures and turf, added to irrigation water, and sprayed on leaves of crops and ornamentals.  Neonicotinoids are now one of the most widely used classes of agricultural chemicals in North America both in industrial agriculture and residential areas, and can persist for long periods of time in plants and soil.

40.     There are no existing regulatory mechanisms to adequately protect or restore monarch butterflies.  While voluntary measures exist, they are not regulatory, nor are they sufficient to ensure the survival or bring about the recovery of monarchs to viable levels.

CLAIM FOR RELIEF

Violation of Endangered Species Act, 16 U.S.C. § 1533(b)(3)(B)
Failure to make a 12-Month Listing Determination on the Monarch Butterfly Petition

41.     Plaintiffs re-allege and incorporate by reference all the allegations set forth in this Complaint.

42.     The ESA expressly mandates that Defendants make the 12-month finding within twelve months of the date of receipt of a petition to list a species as endangered or threatened under the ESA.  Defendants have violated that express statutory command.

43.     Plaintiffs and their members are adversely affected by FWS's continued failure to issue the 12-month finding, violating Congress's mandate in the ESA that FWS issue that decision by an express deadline of 12-months.

44.     The APA states that a reviewing court "shall" interpret statutes and "compel agency action unlawfully withheld or unreasonably delayed."  *Id.* § 706(1).

45.     Defendants' failure to make a 12-month finding on the Petition to list the Monarch butterfly as a threatened species is a violation of the ESA and its implementing regulations, 16 U.S.C. § 1533(b)(3)(B), and therefore also constitutes agency action that has been "unlawfully withheld or unreasonably delayed," within the meaning of the APA. 5 U.S.C. § 706(1).

REQUEST FOR RELIEF

Plaintiffs respectfully request that the Court enter Judgment for Plaintiffs providing the following relief:

A.     Declare that Defendants violated the ESA and/or the APA by failing to issue a timely 12-month finding on the Petition to list the monarch butterfly under the ESA;

B.     Order Defendants to issue, by a reasonable date certain, the 12-month finding on the Petition to list the monarch butterfly under the ESA, 16 U.S.C. § 1533(b)(3);

C.     Grant Plaintiffs their attorneys' fees and costs in this action as provided by the ESA, 16 U.S.C. § 1540(g)(4), or the Equal Access to Justice Act, 28 U.S.C. § 2412; and

D.     Provide such other relief as the Court deems just and proper.

Dated this 10th day of March, 2016          Respectfully submitted,

/s/ George A. Kimbrell

GEORGE A. KIMBRELL (*Pro Hac Vice* application pending)
Center for Food Safety
917 SW Oak Street, Suite 300
Portland, OR 97205
Telephone: (971) 271-7372
Facsimile: (971) 271-7374
Email: gkimbrell@centerforfoodsafety.org

/s/ Amy R. Atwood

AMY R. ATWOOD (*Pro Hac Vice* application pending)
Center for Biological Diversity
P.O. Box 11374
Portland, OR 97211-0374
Telephone: (971) 717-6401
Facsimile: (503) 283-5528
Email: atwood@biologicaldiversity.org

*Counsel for Plaintiffs*